Troy A. MILES, et al., Plaintiffs,

v.

William FARRELL, et al., Defendants.

No. 78 C 481.

United States District Court,
N.D. Illinois, E.D.

Aug. 25, 1982.

---

Philip H. Corboy, John D. Hayes, Chicago, Ill., for plaintiffs.

John R. Caffrey, Joyce E. Staat, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for William Farrell.

Perry L. Fuller, E. Michael Kelly, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Little Co. of Mary Hosp.

## MEMORANDUM OPINION AND ORDER

### GETZENDANNER, District Judge.

The issue before the court is whether the court properly may bar the testimony of Dr. John T. Flynn who treated the plaintiff, a blind child, both before and after he was retained as an expert by one of the defendants, without disclosing his relationship with the defendant.[1] On the facts of this case, I conclude that the doctor may not be called by any defendant to testify at the trial either as an expert or as a treating physician.

The facts are as follows: On August 17, 1978, the plaintiff's parents were deposed. Two attorneys representing Dr. William Farrell, one of the defendants, were present at the deposition. These attorneys were John Caffrey and Joyce Lewis from the law firm of Clausen, Miller, Gorman, Caffrey & Witous. During the depositions, eight times the parents testified that the plaintiff Troy Miles had been seen and treated at the Bascom Palmer Clinic.

Two weeks later, on August 31, 1978, Mr. Caffrey telephoned Dr. John T. Flynn of the Bascom Palmer Clinic. On September 5, 1978, Ms. Lewis conferred with Dr. Flynn and requested that he act as a consultant on behalf of Dr. Farrell "for the purpose of reviewing the records in this subject lawsuit and possibly testifying as an expert witness at trial." (Lewis Affidavit) Dr. Flynn agreed to act as the defendant's expert on or about January 26, 1979, after he had received Troy Miles's medical records from Dr. Farrell's attorneys.

After being contacted by the defendant's attorneys and before accepting employment as Dr. Farrell's expert, Dr. Flynn examined Troy Miles at Bascom Palmer Institute as a treating physician. After accepting employment as defendant's expert, on February 12, 1979, Dr. Flynn, *in his capacity as treating physician,* hospitalized Troy Miles at the Bascom Palmer Institute and performed an examination under general anesthesia. At no time did Dr. Flynn reveal to the plaintiff's parents any of the facts relating to his involvement with one of the defendants in this case.

On January 13, 1982, Dr. Farrell's attorneys disclosed Dr. Flynn as an expert witness on behalf of the defendant. On February 22, 1982, Dr. Flynn again hospitalized Troy Miles at the Bascom Palmer Institute, ordered ultrasound and an electrocardiogram, and examined Troy Miles under general anesthesia. On or about March 26, 1982, one of the plaintiff's attorneys contacted Dr. Flynn concerning his dual status as treating physician and expert witness for the defendant.[2]

---

1. The court received a letter and numerous telephone calls from Dr. Flynn asking that the court determine whether or not he may act as an expert for the defendant. The court did not discuss the issues with the doctor but instead asked the parties to brief the issue. However, the plaintiff now seeks an order barring the doctor's expert testimony.

2. There is nothing in the record which explains the circumstances under which Dr. Flynn was permitted to treat Troy Miles in February of 1982, after Dr. Flynn had been disclosed as a defendant's expert. I assume that the plaintiff's parents were not advised of Dr. Flynn's role as defendant's expert. If the parents were aware of Dr. Flynn's conflict and consented to

The defendant persists in his argument that he should be entitled to call Dr. Flynn to testify as an expert, including his treatment of Troy Miles, and his consultations with Troy Miles's parents in his capacity as treating physician. The defendant argues that any doctor/patient privilege which requires Dr. Flynn to honor his patient's privacy is waived by the fact that Troy Miles filed this lawsuit which puts his medical condition at issue. (This is a suit against a hospital and a doctor for medical malpractice.) The defendant further argues that Dr. Flynn owes no cognizable fiduciary duty to Troy Miles which might prevent him from testifying as a defendant's expert.

Dr. Flynn wants to testify; he informed the court that "I see my role as testifying as an expert witness, and qualified to speak on the scientific knowns and unknowns in cases of retrolental fibroplasia." (Dr. Flynn's letter to the court.) Dr. Flynn assures the court that he did not knowingly act as both expert and treating physician.[3]

Arguments similar to the defendant's arguments in this case were rejected by the Circuit Court of Cook County in *Barkin v. Skokie Valley Community Hospital*, 76 L 23428. In that case the defense attorneys (who were from the same law firm as the defense attorneys for Dr. Farrell in this case) contacted the plaintiff's treating physician and conferred with him with respect to his acting as a defense expert. The court held that the doctor owed his patient a duty of confidentiality, fiduciary in nature, in extra-judicial communications and that notwithstanding the existence of the medical malpractice litigation filed by the plaintiff, the doctor/patient privilege protected the patient against any disclosures not sanctioned or permitted by the Illinois privilege statute (Ill.Rev.Stat. ch. 51, § 5.1)

or by the rules of discovery of the Illinois Civil Practice Act. On June 22, 1982, Judge James E. Murphy entered an order barring a treating physician from acting as an expert for the defendants and directing the defense attorney to destroy all notes of his private contact and conference with the treating physician.

■ I agree with the Circuit Court's analysis and to the extent I must follow Illinois law on state law privileges, the opinion is binding. Dr. Flynn owes a fiduciary duty of confidentiality to his patient. As a general rule, a treating physician may not discuss his patient's medical condition with opposing counsel except pursuant to discovery authorized under the applicable rules of civil procedure.

■ The other side of the coin relates to the conduct of lawyers. Counsel should not contact a treating physician except pursuant to authorized discovery. A necessary corollary rule is that lawyers should not contact doctors affiliated or associated with a treating physician without full disclosure of all relevant facts so that the doctor may avoid the kind of situation that occurred in this case. No lesser standard of conduct for attorneys is even arguable.

In addition to owing a fiduciary duty of confidentiality, as an expert employed by the defendant Dr. Flynn had a clear conflict of interest which he had an obligation to disclose to his patient. He failed to make a proper disclosure and it is not relevant that his failure was unintentional. It is also likely that a physician owes a duty of loyalty to his patient which would prevent him from testifying as an expert against his patient. (Although Dr. Flynn might argue that his testimony will only be the truth

---

the February, 1982, treatment, the court should be made aware of those facts.

**3.** The attorneys for defendant apparently did not inform Dr. Flynn that the plaintiff was a patient at the Bascom Palmer Institute, with which Dr. Flynn was affiliated, at the time they first contacted Dr. Flynn. Had they informed Dr. Flynn, he would have been conscious of the fact that the Troy Miles he was about to treat and was treating was the same Troy Miles who

was the plaintiff in the lawsuit in which Dr. Flynn was to testify as a defense expert. Considering the fact that just two weeks before they contacted Dr. Flynn the attorneys were present at the plaintiff's parents' deposition and learned that the plaintiff was a patient at the Clinic, the attorneys' apparent failure to give full information to Dr. Flynn is inexcusable.

and may not be adverse to his patient, the mere fact that he takes the stand as an expert employed by the defendant assures that his position is adverse to that of his patient.) However, the parties have not briefed this issue and I do not believe it is necessary to rule on the basis of what I perceive to be a physician's duty of loyalty and Dr. Flynn's willingness to breach that duty.

Under the circumstances of this case, the appropriate sanction is to bar any defendant from calling Dr. Flynn to testify in any capacity. Accordingly, the court hereby orders that Dr. Flynn shall not be called to testify by any of the defendants in this case.