210 N.J. Super. 420 (1986)
510 A.2d 68
OVERLOOK TERRACE CORPORATION, ET AL., PLAINTIFFS-APPELLANTS,
v.
EXCEL PROPERTIES CORPORATION, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1986.
Decided May 19, 1986.
Before Judges DREIER, BILDER and GRUCCIO.
Harold J. Cassidy argued the cause for appellant Overlook Terrace Corp. (Cassidy, Despo, Foss & San Filippo, attorneys; Harold J. Cassidy and Randolph H. Wolf, on the brief).
*421 James A. Scarpone argued the cause for intervenor Dr. Douglas Carmichael (Scarpone & Edelson, attorneys; James A. Scarpone and Marian B. Copeland, on the brief).
Raymond Barto argued the cause for Excel Properties Corp. respondent (Warren J. Kaps & Associates, attorneys; Raymond Barto and Concetta R. DeLucia, on the brief).
Jeffrey J. Greenbaum argued the cause for Margolin, Winer & Evens and Howard Kalb respondents (Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, attorneys; Jeffrey J. Greenbaum, of counsel and on brief, and Steven H. Sholk, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs have appealed by leave granted from a Chancery Division order barring the testimony of plaintiffs' proposed expert, Dr. Douglas Carmichael. Defendants contended that Carmichael, an accounting professor and former vice president of The American Institute of Certified Public Accountants (AICPA), was precluded from testifying by reason of his earlier participation in ethics proceedings implicating defendants Margolin, Winer & Evens and Howard Kalb (the accounting defendants). The trial judge agreed, citing public policy reasons involving the confidentiality of professional ethics proceedings.
Plaintiffs Overlook Terrace Corporation and its sole shareholder, James Conforti, Jr., filed a complaint against Excel Properties Corporation and related entities and against the accounting defendants who performed accounting services for an urban renewal project known as the Overlook Terrace Project. Plaintiffs and the Excel defendants were each 50% partners in the development and management of the project. Plaintiffs alleged a breach of fiduciary duty and malpractice against the accounting defendants.
In February 1984 plaintiffs submitted Dr. Carmichael's 150 page expert report to the accounting defendants. The report *422 followed approximately 10 months of discovery and 80 days of depositions of approximately 60 witnesses, premised upon a generalized short report submitted by a different expert. Defendants moved to exclude Carmichael's report on two grounds: the violation of prior discovery orders and the alleged impropriety of Carmichael's appearance as a witness by virtue of his prior involvement with AICPA's earlier investigation of the accounting defendants and another project, Parkview Towers.
Our examination of the prior discovery orders indicates that Carmichael's testimony would in no way have violated the special master's discovery determinations or prior orders of the court. The question on this appeal, therefore, is whether the trial judge's determinations concerning Carmichael's participation in AICPA's hearing process and any concomitant need for confidentiality required the expert's exclusion.
Carmichael testified that he had no current association with AICPA but had been a vice president during its prior investigation. He had never served as a director of AICPA, nor was he involved with its Ethics Division or Trial Board. He explained that the usual manner in which an ethics complaint is handled is that the Ethics Committee assembles information and presents it to the Executive Committee which in turn determines whether to present the issue to a regional Trial Board. Proceedings before the Trial Board allow for a hearing and an opportunity to appeal. The hearing and complaint file are confidential, although the results are published.
The internal rules of AICPA require that "investigations of potential disciplinary matters are to be conducted in a confidential manner." The extent of Dr. Carmichael's interaction with the Ethics Committee had been to forward to it information that might come to his attention, which he did three to four times a year during his 14 years with AICPA He also had the duty to respond to technical questions posed by the media.
In July 1978, a reporter for the Trenton Times investigating the operation of Parkview Towers was referred to Carmichael. *423 Carmichael's initial testimony was that he told the reporter that he could not comment on the conduct of any AICPA member but would answer a hypothetical question without reaching a conclusion. Two articles followed the interview, one of which stated that Carmichael "has asked the AICPA Ethics Division to look into the case of Parkview Towers." Carmichael acknowledged that he would have let the reporter know that he had forwarded the information. A third article appeared August 6, 1978 disclosing that the Housing Finance Agency intended to replace the project accountant. An HFA officer was quoted as stating that "the agency has concluded, after consulting informally with the AICPA and our own auditors that there is a conflict." Although Carmichael testified that he was not the person at AICPA who would have discussed the matter with the HFA official, discovery uncovered a memorandum of the official dated just prior to the article stating that Carmichael
... indicated to [the official] in confidence that the investment of principals of the firm appeared, on the surface, to be in conflict. He indicated that Rule 101 was the appropriate procedure in this instance.
The referenced rule mandates the independence of an accountant providing auditing services.
On August 8, 1978, Carmichael forwarded one of the articles concerning Parkview and the accountants to the Director of the Ethics Division together with a brief note explaining that the article "contains information on apparent flagrant violation of Rule 101 on independence" he further stated: "I hope the Ethics Division will pursue this matter." There is no evidence in the record that Carmichael had any further dealings with the case, although his name was carried as the initiator of the complaint since his submission to the Ethics Division was the first of several it received concerning the Parkview matter. Carmichael contended in his certification that from his reading of the newsletter report of the censure of defendant Kalb, it apparently took three years from the start of the investigation until final action, and that apart from referring the matter to *424 the Ethics Division, he (Carmichael) "played no part at all in the decision as to whether the investigation should go forward or not."
The trial judge apparently barred Carmichael, not so much to protect confidential disclosures, but rather to indicate the court's disagreement with Carmichael's expressed understanding of the accountant's Code of Ethics. The judge explained that Carmichael's
... misperception of the rules on independence for accountants renders him unqualified to offer an expert opinion as to whether the accounting defendants violated those very same rules.
This ruling apparently was based upon Carmichael's explanation of Section 52.10 of the Rules of Ethics mandating "the importance of both the appearance and fact of independence, integrity and objectivity." Carmichael stressed that this precept applies to maintaining independence when expressing an opinion on financial statements. He maintained that the Code of Ethics contains no provision construable as barring his trial testimony, even if he had been a member of the Trial Board investigating Parkview, provided the information obtained while serving on the hearing panel was kept confidential.[1]
The trial judge further found that since the special master had previously precluded discovery regarding Parkview,
... it would be virtually impossible for the accounting defendants to establish what impact the information which Carmichael received in ... 1978 .. . had upon his expert opinion.
But, as noted earlier, Carmichael has certified that he possesses no knowledge concerning the Parkview matter other than that obtained through the newspapers. There is no impediment to *425 questioning him concerning what influence such information would have upon his opinions.
In effect, the order appealed from implicitly made an in limine ruling pursuant to Evid.R. 4 that the evidence should be excluded since its probative value was substantially outweighed by the risk that its admission would create a substantial danger of undue prejudice. Although the trial judge's opinion asserted "numerous references to the accounting defendants' involvement with Parkview Towers and to the AICPA Ethics Division investigation," our examination of the report yields few such references. Since plaintiffs have stipulated that there would be no use of or reference to the censuring of one of the accounting defendants (Kalb) or any other information concerning the Ethics Committee's investigation of Parkview, all references to the investigation or censure could safely be redacted from any evidence adduced from Carmichael.
The trial judge's further determination that Dr. Carmichael could not appear as an expert witness since such appearance would violate AICPA ethics rules and have a chilling and inhibitory effect upon the confidentiality of ethics proceedings is also not borne out by this record[2]. Although our conclusion might be more easily reached had Dr. Carmichael not publicly disclosed his reference of the matter to the Ethics Committee, we note that his prior limited conduct with the Parkview matter in no way impinges upon his qualifications as an expert witness. If defendants seek to impeach Carmichael's credibility by reference to the Parkview matter, such is their option; but even then the trial judge can effectively limit the details. The resulting censure of one of the defendants need not have an effect on the fact-finding process.
*426 The permitted disclosure of expert opinion developed during otherwise confidential proceedings is not unknown to our Rules of Court. Rule 4:21-8 renders the medical malpractice hearing panel proceedings confidential. Yet R. 4:21-6(d) permits the physician member of the panel and any expert who has testified to be called by any party at the subsequent trial. See Koch v. Community Hospital, 187 N.J. Super. 573, 575-76 (Law Div. 1982). Such testimony is, of course, subject to the right of the opposing party to show the bias of the witness. Perna v. Pirozzi, 92 N.J. 446, 455 (1983).
The trial judge next was concerned with a public perception of impropriety based upon Carmichael's trading upon "inside" information concerning the Parkview matter. There is no factual basis for such misapprehension on the part of the public, since Carmichael took no part in the investigation or hearing of the Parkview case. Even if the facts were otherwise and Carmichael had participated in the Parkview hearing, the trial judge would have been required to employ an Evid.R. 4 analysis as a prerequisite to recognizing and applying a policy of confidentiality applicable to a peer review or internal hearings by a professional hearing board. Cf. McClain v. College Hospital, 99 N.J. 346 (1985) (where no privilege attaches, a court must balance the "obvious interest of the agency in the confidentiality of its proceedings" with the litigant's "extraordinary interest in gaining access to the information." Id. at 362-63). In this case, however, there is no agency interest, since there were no confidential proceedings in which Carmichael participated. See also Wylie v. Mills, 195 N.J. Super. 332 (Law Div. 1984) (nascent privilege for evaluative portions of internal corporate self-critical investigative report recognized). In addition, there was no breach of a confidence such as in Conforti & Eisele Inc. v. Div. Bldg. & Const., 170 N.J. Super. 64, 72-73 (Law Div. 1979) or Piller v. Kovarsky, 194 N.J. Super. 392, 396-399 (Law Div. 1984).
Lastly, we must treat Carmichael's claim that he faced unwarranted criticism in the trial judge's opinion. We have read *427 the opinion and the record and agree with Dr. Carmichael that the trial judge was mistaken in his interpretation of the testimony. This having been noted, however, we find no basis to grant the extraordinary relief of striking a portion of a court's letter opinion, expressed in good faith by an able jurist.
The order appealed from is reversed and the matter is remanded for trial on the merits.
NOTES
[1] Dr. Carmichael has intervened by leave granted to argue the impropriety of the trial judge's inclusion in his opinion of references to Dr. Carmichael's misperception of ethics rules and to affirmatively argue the lack of such breach. By separate motion the accounting defendants sought leave to cross-appeal from the trial court's order declining to disqualify Dr. Carmichael based upon plaintiff's violations of discovery orders. This motion was denied.
[2] The trial judge need not be concerned with any objections by the AICPA arising from Dr. Carmichael's proposed appearance. The Association's Secretary and General Counsel has stated that the AICPA found no prohibition against Dr. Carmichael's appearing as an expert witness in this case.