**MARVIN LUMBER & CEDAR COMPANY, Plaintiff,**

v.

**NORTON COMPANY, Defendant.**

**Civ. 6–85–93.**

United States District Court,
D. Minnesota.

Dec. 23, 1986.

Stephen Tourek and Stephen Snyder, St. Paul, Minn., for plaintiff.

Peter Sipkins, St. Paul, Minn., Paul Hempel and Raymond Hayward, Minneapolis, Minn., for defendant.

Vance Grannis, Jr., South St. Paul, Minn., for Twin Cities Testing.

## ORDER

JANICE M. SYMCHYCH, United States Magistrate.

The above matter came on before the undersigned on November 26, 1986 and December 5, 1986 upon various pretrial mo-

tions. On November 26, Stephen Tourek, Esq. and Stephen Snyder, Esq., appeared on behalf of plaintiff; Peter Sipkins, Esq., and Raymond Hayward, Esq., appeared for defendant; and Vance Grannis, Jr., Esq., appeared on behalf of Twin Cities Testing. On December 5, Stephen Tourek, Esq. appeared for plaintiff, and Peter Sipkins, Esq. and Paul Hempel, Esq., appeared for defendant.

## BACKGROUND

This is a multimillion dollar claim by a national manufacturer of insulated windows against a manufacturer of sealant utilized over a number of years by plaintiff in the construction of its windows. The claim is that the sealant was generically defective in its chemical formulation, and, among other things, allowed plaintiff's windows to leak, causing customer complaints, replacement obligations, and damage to plaintiff's commercial reputation. The litigation has presented unwieldy discovery challenges to the parties, and has generated a need for considerable court intervention in its pretrial phases. Presently before the court are the following:

—cross motions relating to defendant's employment of Twin Cities Testing as an expert in pretrial product inspections;
—defendant's motion to modify an October 15, 1985 order of United States Magistrate J. Earl Cudd regarding pretrial product inspections;
—defendant's motion to compel supplemental responses to its damages discovery; and
—defendant's motion to extend the pretrial schedule.

They will be taken up seriatim.

## I. DISQUALIFICATION OF DEFENDANT'S RETAINED EXPERT

Plaintiff has moved to disqualify Twin Cities Testing (TCT), an independent scientific testing laboratory, from its present role as a consulting expert of defendant, and from any role as defendant's expert witness at trial. It does so on grounds of conflict-of-interest, based upon TCT's relationship with plaintiff predating and continuing through the date of retention by defendant in this litigation. Plaintiff asserts that under the circumstances, TCT is simultaneously serving two masters, on substantially related matters. It further asserts that TCT is in possession of the confidences and secrets of plaintiff, on subject matter related to this litigation, and that the preservation of those confidences requires disqualification. The facts leading to this dispute are outlined in an order dated November 14, 1986, temporarily granting plaintiff's request for disqualification.

In essence, the parties concur that the court can and should determine issues regarding disqualification of expert witnesses, (as opposed to the better recognized role of the court in determining issues regarding disqualification of counsel). They further concur that if TCT was indeed engaged as a consulting engineer with plaintiff, on matters relevant to this litigation, at the time it was retained by defendant, that it should be disqualified. The court agrees with that proposition, and finds it supported in the case law. *Conforti v. Eisele, Inc. v. Div. of Building & Construction*, 170 N.J.Sup. 64, 405 A.2d 487 (1979). The parties, however, disagree on the question of whether TCT was so employed at the time. They have submitted affidavits and deposition transcripts in support of their views.

In essence, defendant characterizes the relationship as one in which TCT, upon intermittent agreements, would perform standardized, routine industry tests for plaintiff, and report its results. This is something which TCT does, as a large independent laboratory, for a wide variety of clients in a wide variety of industries. Defendant urges that TCT, during its relation with plaintiff, did not render opinions, provide advice, or consult as professional engineers. It denies that any expert-client relation existed. It emphasizes that TCT has not been retained by plaintiff for this litigation.

Plaintiff describes the relationship as one involving "professional advice," and more than the "simple reading of a speedometer" for a fee. Plaintiff states that beyond standardized testing, TCT has engaged in product development work for plaintiff, has performed in-house tests, more rigorous than the industry standards, and has had long-term access to sensitive product design information and plaintiff's manufacturing and research facilities. In addition, it points out that TCT has performed tests to determine water infiltration problems, which is a matter at the heart of this litigation. TCT previously served as plaintiff's litigation expert in an unrelated sealant case, and defendant has sought those materials in the discovery of this case.

As for TCT, it emphasizes the nature of the task assigned to it by defendant in this case, asserting that by its nature, it presents no conflict with plaintiff's interests. In doing so, it states that TCT is retained simply to attend plaintiff's window replacements, and to report as an eyewitness to defendant any installation problems present at the site, which could explain the reason for the window failure involved. TCT emphasizes that it has not divulged, and will not, any information or knowledge acquired by it during its relationship with plaintiff. Defendant has formally represented to the court that it has received no such information. TCT asks that, if disqualification is ordered, it not be based on a finding of an actual breach of confidentiality. Indeed, the record would not support such a finding.

▆▆▆ Nonetheless, a disqualification order is warranted. To accept either defendant's or TCT's view of the relationship would amount to an artificially narrow view of its essence. Rather than the simple, unthinking performance of unrelated mechanistic tasks urged by defendant, the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of plaintiff's modus operandi, patterns of operation, decision-making process and the like. The rules governing disquali-

fication are designed to protect against the potential breach of such confidences, even without any predicate showing of actual breach. That is the case with respect to expert witnesses, *Conforti*, 405 A.2d at 489–92, and *Miles v. Farrell*, 549 F.Supp. 82, 84 (N.D.Ill.1982), just as it is the well-accepted rule with respect to attorney disqualification. The threat or potential threat that confidences may be disclosed is enough. *Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985); *Arkansas v. Dean Foods Products*, 605 F.2d 380 (8th Cir. 1979) *overruled on other grounds, In Re Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377 (8th Cir.1980), *vacated and remanded*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); and *United States v. Shepard*, 675 F.2d 977 (8th Cir.1982). As the *Conforti* court observed, there is no sound basis for application of any different rule on the sole rationale that an expert, rather than an attorney, is the subject of the motion. *Id.* 405 A.2d at 491.

▆▆▆ This result is particularly apropos here because the subject matter of the prior relationship clearly impinges upon this litigation. To distinguish the relationships upon the notion that the product inspections here are merely factual and mechanistic is disingenuous. Defendant surely will claim at trial that many of the defects in the subject windows are attributable to plaintiff's manufacturing flaws and installation errors. TCT's prior relationship with plaintiff includes exposure to information about, and exchanges regarding the adequacy of plaintiff's window manufacturing. The test, regarding attorney disqualification, as articulated in this Circuit, is that the party seeking disqualification of opposing counsel must show that counsel to have an attorney-client relationship with an adverse party in the present suit, and that the matters involved in the pending suit are substantially related to the matters or cause of action in which the attorney previously represented him. *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602,

608 (8th Cir.1977), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), *overruled on other grounds, In Re Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377 (8th Cir.1980), *vacated and remanded*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). *See also, United States Fidelity and Guaranty Co. v. Louis A. Roser Co.*, 585 F.2d 932, 939 (8th Cir.1978). A substantial relationship is present if the factual contexts of the two representations are similar or related. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). Under these well-established principles regarding attorney disqualification, the factual context in the instant case qualifies readily as "substantially related."

■ The court must then balance the interests and motivations of the attorneys and clients, and the public's interest in determining whether a motion for disqualification should be granted. *Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d 380, 383 (8th Cir.1979). Any doubt is to be resolved in favor of disqualification. *Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir.1978).

It is thus clear, that the eyewitness observation of the window replacements (concededly on windows for which damages will be claimed) alone is likely to place TCT in an adversarial position against its past and present client. The very act of testifying on this subject on Norton's behalf would be adverse, and should not be permitted here. *Miles v. Farrell*, 549 F.Supp. 82, 85 (N.D. Ill.1982).

■ For the foregoing reasons, the motion to disqualify TCT will be granted. By virtue of that decision, defendant's motion to prohibit plaintiff's ex parte conversations with TCT is mooted. It should be observed, however, that the record does not support any finding that plaintiff's counsel improperly attempted to obtain information or discovery from TCT related to this case. Instead, the conversations in issue are best characterized as notice to and inquiries by an existing client regarding the "two masters" complaint of plaintiff. Just as defendant had a right to communicate with TCT regarding its reten-

tion, plaintiff had a right to do so as an ongoing client. The dispute is merely illustrative of the basis for disqualification. Therefore, application of *Durflinger v. Artiles*, 727 F.2d 888 (10th Cir.1984), and *Campbell Industries v. M/V Gemini*, 619 F.2d 24 (9th Cir.1980), as urged by defendant, should be and is rejected.

## II. PRETRIAL PRODUCT TESTING

■ By way of an order dated October 15, 1985, United States Magistrate J. Earl Cudd granted defendant's motion for a Rule 26(c) protective order, to allow it to observe plaintiff's window replacements, and to test certain of the replaced windows for presentation of its defense at trial. The number of window replacements is voluminous, involving commercial and residential buildings alike, across the nation. Each window replaced will become part of plaintiff's claimed damages. Logistical problems with the application of the protective order, which were not foreseeable at the time of its issuance, have arisen. Defendant seeks, and will be granted, an amendment of the protective order as follows:

1. Plaintiff shall provide the name, address, and telephone number of the customer at each replacement site noticed pursuant to the order, at the time specified by the order, or such other time as agreed to by the parties;

2. To the extent known by plaintiff, its replacement site notice shall set forth the number of windows to be replaced at each location;

3. Defendant shall notify plaintiff within two weeks of any customer interview it conducts, identifying the customer interviewed;

4. Each party may conduct destructive testing of 1000 units, without providing prior notice of the fact or nature of the testing, except that with respect to distributor-replaced windows, defendant shall provide written notice of the intent to destructively test, and a reasonable opportunity for plaintiff to inspect such units prior to testing;

5. With respect to windows selected by defendant for destructive testing, plaintiff shall keep intact, retain, and not destroy any component parts related to that window unit, including substances affixed thereto;

6. Each party shall have free access, within the relevant Federal Rules of Civil Procedure, to all third party witnesses, including customers, dealers, and distributors;

7. Plaintiff, notwithstanding its replacement site notice, may return to a site to complete replacements, if for some bona fide reason it cannot complete all replacements at a single time; in such a case, plaintiff shall provide defendant five days written notice of the need to return, the return date, and the reason therefore; and

8. Each party may seek further amendment of the protective order as may be necessary.

## III. DAMAGES DISCOVERY

Defendant complains that plaintiff's damages claim is astronomically high, and that well after the mid-point in the discovery period, it lacks responses from plaintiff to its discovery requests on the subject. It urges the court to compel responses before the midnight hour, so that it can adequately prepare a defense to this significantly large and complex aspect of the case.

The damages portion of a trial may be as significant as the liability portion. It goes without saying that a defendant is entitled to discovery of its adversary's theory or measure of damages, its calculations under that theory, and expert opinions on the subject of damages. *Kodekey Electronics, Inc. v. Mechanex Corp.*, 486 F.2d 449, 458 n. 10 (10th Cir.1973); *Bogosian v. Gulf Oil Corp.*, 337 F.Supp. 1228, 1230 (E.D.Pa. 1971); and *Technograph, Inc. v. Texas Instruments, Inc.*, 43 F.R.D. 416, 418 (S.D.N.Y.1967).

■ While it is clear that plaintiffs in civil actions often are unable to finally calculate their damages until discovery is received from the defendant, they are under some obligation to answer such discovery requests well prior to the discovery deadline. To have it otherwise would obviously and unfairly prejudice a defendant in its trial preparation. *Knapp v. Whitaker*, 757 F.2d 827, 848–49 (7th Cir.1985); *Laclede v. Gas Co. v. G.W. Warnecke Corp.*, 604 F.2d 561, 565 (8th Cir.1979). *See also, Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344–45 (8th Cir.1979). This is especially so, where, as here, plaintiff will rely upon expert opinion for presentation of its damages proof. Defendant is entitled to prepare contrary expert testimony within the discovery period. *Laclede*, 604 F.2d at 565.

■ In order to facilitate this result, this court issued an order on February 26, 1986, requiring plaintiff, in response to defendant's interrogatories 32 and 44, to produce bimonthly damages reports to defendant, with an obligation to keep defendant current on the state of plaintiff's damage calculations and the bases therefore. A review of the currently submitted report shows that for this stage of the discovery period, the report is quite inadequate, and at best, only hints at what plaintiff's total damage claim will be. Its greatest flaw is that it fails to set forth the basis for, or the sources of raw data to be relied upon by plaintiff. Plaintiff's counsel reassures the court that the forthcoming damages reports will be more detailed and full. It emphasizes to the court, however, that an absolutely final computation cannot be made at this time. That is understandable. With all of this in mind, the motion to compel more specific damages reports will be granted. The next damages report shall include an itemization of the component costs used by plaintiff in arriving at its $100 per replacement cost, as well as identification of and production of the raw documents in support of those component valuations.

Defendant also seeks to compel responses to Set I of its documents request, numbers 4 and 10, regarding plaintiff's lost

profits. Plaintiff agrees to provide all financial data bearing on lost profits by January 1, 1987, including, but not limited to those enumerated in Exhibit C. Plaintiff, of course, is not obligated to produce documents it claims to be privileged.

## IV. PRETRIAL SCHEDULE

Defendant seeks a three-month extension of the pretrial schedule. The primary reason for the extension is to allow for the taking of some 75 depositions, which defendant states would have to be taken at the rate of four per day in order to conclude by the present deadline of March 15, 1987. In addition, defendant states that the inadequate damages discovery produced by plaintiff to date has left it without sufficient time to conduct the "fact witness" aspect of damages discovery necessary before preparation of expert opinions on that subject.

 Rule 16(b) of the Federal Rules of Civil Procedure requires a showing of good cause before a pretrial schedule may be expanded. This matter has been kept on a deliberately tight pretrial schedule, in order to keep counsel and the parties attentive to the need to work intensely and quickly on discovery, given the unwieldy nature of the fact investigation. The time thus far allotted has been well-utilized, and considerable work has been accomplished. It is apparent that the remaining time is insufficient to allow completion of discovery.

To alleviate the confusion asserted at hearing, it should be made clear that the pretrial schedule contemplates the conclusion of all fact discovery prior to the beginning of the period for expert discovery, without overlap of the two.

Therefore, based upon the briefs and arguments of counsel and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion to disqualify Twin Cities Testing as defendant's consulting and/or testifying expert is GRANTED;

2. Defendant's motion for a protective order regarding Twin Cities Testing is DENIED;

3. Defendant's motion to amend the pretrial order of October 15, 1985, is GRANTED as set forth;

4. Defendant's motion to compel more specific answers to Interrogatories 32 and 44, and Document Request Set 1, numbers 4 and 10 is GRANTED;

5. Defendant's motion for extension of the pretrial schedule is GRANTED, as follows:

a. All discovery shall terminate on August 1, 1987;

b. All nondispositive motions, specifically those which relate to discovery and the discovery period, shall be filed and heard prior to August 1, 1987;

c. All discovery on subjects other than expert opinions shall terminate and all nondispositive motions in that regard shall be filed and heard prior to May 15 1987;

d. All discovery regarding expert opinions shall terminate and all nondispositive motions in that regard shall be filed and heard prior to July 15, 1987;

e. All dispositive motions shall be filed and scheduled for hearing pursuant to Local Rule 4 prior to September 1, 1987;

f. This case shall be considered as ready for trial on November 1, 1987.

6. A Rule 16 status conference will be held before the undersigned on April 8, 1987, at 1:30 p.m. The parties shall submit and serve matters for hearing pursuant to the local rules.