UNITED STATES of America,
Plaintiff,

v.

NHC HEALTH CARE CORP, d/b/a
NHC Health Care Center of Joplin, NHC/OP LP, Defendants.

No. 00–3128–CV–S–4–ECF.

United States District Court,
W.D. Missouri,
Southern Division.

June 28, 2001.

### ORDER

FENNER, District Judge.

Presently before the Court is the Plaintiff, the United States of America ("United States" or "Government")'s Motion to Disqualify and Exclude Defense Expert Jeanne Rutledge. This Motion is opposed by the Defendants NHC Health Care Corporation, NHC/OP LP ("NHC"). For the reasons set forth below, the Plaintiff's Motion is hereby GRANTED.

### DISCUSSION

**I. Standard**

Federal district courts have the inherent power to disqualify experts. *Koch Refining Co. v. Boudreaux M/V*, 85 F.3d 1178, 1181 (5th Cir.1996). This power derives from the court's duty to ensure confidence in the fairness and integrity of the judicial process. *United States ex rel. v. Healthcare Rehab Systems, Inc.*, 994 F.Supp. 244, 248 (D.N.J.1997). The district court's decision will not be overturned absent an abuse of discretion. *Koch*, 85 F.3d at 1181.

**II. Background**

This suit was brought by the Government against the Defendants under the

False Claims Act ("FCA"). The Government alleges that the Defendants, participants in the Medicare/Medicaid programs, submitted false or fraudulent bills to the United States in violation of the FCA. More specifically, the Government alleges that the care of two particular residents was so insufficient and negligent that the bills submitted amounted to fraud. The Defendants have denied all material allegations levied by the Government in the Complaint.

■ Defendants have designated Jeanne Rutledge as an expert witness in this case. Rutledge is a former employee of the Division of Aging ("Division"), and Plaintiff argues that she cannot act as an expert for the Defendants. Rutledge worked for the Division for twenty-two years, and when she left employment there in 2000 she had management responsibilities. One management position she held at relevant times to this lawsuit is that of Acting Deputy Director of Institutional Services and Program Manager, which gave her oversight responsibilities for all nursing homes operating in Missouri. In this position, Rutledge admits that she had general knowledge and awareness of the Government's investigation and sanctions of the Defendants' Joplin facility. She claims that she had little, if any, contacts with the investigation of NHC and that she certainly did not gain any confidential information about the Government's litigation strategy: The record reflects otherwise.

In 1998, the Division began an investigation of the NHC facility after a series of complaints were lodged against the facility. The Division conducted a joint survey of NHC with the Health Care Financing Administration ("HCFA") to determine whether the facility had engaged in Medicaid fraud. The survey indicated healthcare deficiencies for Residents 1 and 2, said findings forming the basis for this lawsuit Rutledge signed the "State Agency Survey Approval" form certifying and transmitting the survey findings to the HCFA for its consideration of punitive action against NHC. The form contained detailed findings and several recommendations (including civil monetary penalties and termination from the Medicare program) from the Division. Rutledge claimed that she signed the forms because two other more responsible managers were unavailable. She further claims that she did not personally make any investigations or recommendations concerning NHC.

The Plaintiff disputes Rutledge's claims of non-involvement via the affidavit of Division employee Linda Hollifield. Hollifield states that Rutledge personally directed her to add a finding of neglect of residents as a part of the survey. Rutledge also allegedly directed Hollifield to assign a severity level and calculate the civil monetary penalty against NHC. Hollifield finally alleges that Rutledge personally approved of the finding that NHC placed its residents in immediate jeopardy. Rutledge responds to these allegations by stating that she either: (1) did not remember making any such orders; (2) did not have the authority to make such orders; or (3) made the orders because she was required to do so by Division policy.

Plaintiff also offers the testimony of Division surveyor Sherri Boyd to demonstrate Rutledge's involvement in the NHC investigation. Boyd testified that she and Rutledge had a tele-conference concerning the NHC survey in which Rutledge allegedly expressed the opinion that there was a "neglect issue" at NHC. Rutledge also allegedly made the final decision to recommend a Class I citation and to impose civil penalties. Boyd perceived Rutledge as the person "in control" and the only person with the authority to make a finding of a

Class I violation. Rutledge states that she does not remember the conversation, but if she did participate as alleged, she was only relaying decisions made at a higher level at the Division. She claims that she did not have the authority to make those findings herself. She states that persons may have perceived that she had such authority because at one time she did, but at that time her position and authority had changed to the point where she could no longer make such decisions.

Plaintiff also presents evidence that Rutledge participated or even directed several meetings involving the NHC investigation. She also allegedly directed that the NHC survey be referred for investigation to Bill Morgan, who at that time was an Investigator with the Missouri Medicaid Fraud Control Unit ("MFCU"). Rutledge admitted that from time to time she participated in general discussions regarding the NHC survey. She essentially argues that her involvement was superficial and that she did not learn of any confidential information during her involvement. She also testified that she did not recall ever talking to anyone at MFCU about NHC.

Rutledge also participated in a meeting in the Spring of 1999, involving several NHC employees and an NHC attorney from the Armstrong Teasdale law firm. At this meeting, NHC raised several concerns about the investigation and survey. She had further contacts with NHC's attorneys regarding the NHC survey via email. Rutledge states that to the best of her recollection she participated in the 1999 meeting as a second "witness" on behalf of the Division.

Finally, Plaintiff has raised the issue of Rutledge's payment arrangement with Defendants as further evidence of her involvement with the NHC investigation. Originally, Rutledge testified that she was receiving $85.00 per hour for her work as an expert in this case. She has now changed this position and stated that she is performing all work on this case for free. Plaintiff argues that Rutledge's change of heart arises out of a fear of being prosecuted under Missouri law 105.545(6). This law essentially forbids former state employees from generating income from decisions which were made while the person held public office. Plaintiff argues that Rutledge's decision to waive her fee is an implicit admission that the work she is doing in this case relates to decisions which she made while a Division employee. Rutledge states that she decided to drop her fees in this case because the issues "interested" her, and because she fears that the Governments attorney would have promoted her prosecution for violation of Missouri law.

### III. Analysis

Essentially, Plaintiff argues that Rutledge should be stricken as an expert because she has a conflict of interest. Admittedly, this case is not the typical conflict of interest case. Generally, a conflict of interest arises when an expert witness is retained by one party and then "switches side." In such circumstances, courts have unanimously held that such an expert would be disqualified. *See Koch*, 85 F.3d at 1181. In the present case, Rutledge essentially started out as a litigational party and then became an expert for the opposing party testifying against her former position. Although the Division is not a named party to this suit, it is clear that this Missouri agency is a significant part of this litigation as it was the investigating agency which prompted this lawsuit Rutledge even admits that had she learned confidential information while in her position at the Division she would be prohibited from being an expert in the present case. Under the facts presented herein, the Court finds a clear conflict of inter-

est which requires the Court to bar Rutledge's expert testimony.

The Court finds that the most analogous case to the present situation is *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588 (D.Minn.1986). In *Marvin*, a window manufacturer brought an action against a sealant manufacturer alleging that the sealant was defective. *Id.* at 590. The defendant attempted to offer the expert testimony of Twin City Testing ("TCT"), an independent testing laboratory who opined that the sealant was free of defect. *Id.* The plaintiff objected to TCT's testimony arguing that TCT had worked for the plaintiff in the past concerning matters that were "substantially related" to the present litigation. *Id.* The court agreed with the position of the plaintiff finding that TCT had engaged in previous business relationships with the plaintiffs on matters which impinge upon the litigation at issue. *Id.* at 591. The court held that "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of plaintiff's modus operandi, patterns of operation, decision-making process and the like." *Id.* Accordingly, the court struck TCT's expert testimony.[1]

Similarly, in the present case Rutledge clearly gained confidential information concerning the investigation and eventual litigation involving NHC. Despite her claims of only superficial contact with the case, the record demonstrates that she had considerable involvement in the investigation. Indeed, the Court finds it not inconceivable that Rutledge could be called as a fact witness by either party. Whether true or not, those around her perceived Rutledge as having great involvement and authority with regard to the NHC investigation, and such testimony could be highly prejudicial to the Plaintiff considering that Rutledge is now a defense expert.[2] The Court finds her testimony on behalf of the defense inappropriate and a clear conflict of interest.

As to the issue of Rutledge's fees, the Court finds that the circumstances and explanation offered by Rutledge are highly suspicious. If she fears prosecution under Missouri law, then she shouldn't testify. If she is performing this service out of simple interest and experience, she shouldn't have attempted to charge a fee in the first place. The most logical explanation for her actions is the one offered by Plaintiff: Rutledge is a business person who charged a fee for her professional services, but when she became aware of Mo.Rev.Stat. § 105.454(6), she realized the possibility, however remote, that she might be subject to criminal liability. Accordingly, she dropped her fee. She admits as

---

1. The court also noted that it was not necessary for the moving party to show any actual breaches in confidential information for said party to meet its burden. Rather, "the threat or potential threat that confidences may be disclosed is enough." *Id.* at 591. The court adopted a strict standard which places experts on the same standard as attorneys as relates to conflicts, and only requires the appearance of a conflict of interest. *Id.* A split exists among lower courts as to whether such a standard is appropriate or whether experts must have actually gained confidential information before disqualification is proper. *See United States v. Healthcare Rehab Systems, Inc.*, 994 F.Supp. 244, 250 (D.N.J.1997). Because this Court finds that actual confidences were obtained by Rutledge during her employment at Division, the Court need not resolve which standard is proper.

2. For instance, if Division surveyor Sherri Boyd testifies at trial and states her opinion that Rutledge was the person "in control" of much of the NHC investigation, then the Plaintiff may be prejudiced by the inferences drawn by the jury that Rutledge now testifies on behalf of the Defendants. Indeed, the jury's knowledge that Rutledge is a former Division employee who worked on the NHC investigation and now testifies for the Defendants is in-and-of itself prejudicial.

much in her affidavit. The fact that Rutledge believes that a possibility exists that she could be prosecuted under Missouri law reinforces the Court's view that her testimony is improper. Indeed, the Court shares her concerns. Therefore, Rutledge will not be allowed to testify as an expert in this case.

## CONCLUSION

For the foregoing reasons, the Court finds that Rutledge's expert testimony is inappropriate in this matter. Plaintiff's Motion to Disqualify and Exclude Defense Expert Jeanne Rutledge is GRANTED. **IT IS SO ORDERED.**