**GRANT THORNTON, LLP, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant;**

and

**Federal Deposit Insurance Corporation, Plaintiff,**

v.

**Grant Thornton, LLP, Defendant.**

No. CIV.A. 1:00–0655, CIV.A. 1:03–2129.

United States District Court, S.D. West Virginia, Bluefield.

Jan. 6, 2004.

John H. Tinney, Kimberley R. Fields, James K. Tinney, The Tinney Law Firm, Charleston, WV, Stanley J. Parzen, Mayer, Brown, Rowe & Maw, Chicago, IL, Mark W. Ryan, Andrew J. Morris, Craig Isenberg, Mayer, Brown, Rowe & Maw, Washington, DC, Eric M. James, Spilman Thomas & Battle, Charleston, WV, for Grant Thornton, LLP.

Stephen M. Horn, Assistant U.S. Attorney, Charles T. Miller, United States Attorney, Charleston, WV, John A. Davidovich, John Wessling, Mary P. Davis, Washington, DC, David Mullin, John M. Brown, Clint R. Latham, Brad A. Chapman, Suzanne Rigby, Mullin, Hoard & Brown, Amarillo, TX, for Federal Deposit Insurance Corporation.

William W. Booker, Kay, Casto & Chaney, Charleston, WV, for movant.

Stephen M. Horn, Kasey Warner, United States Attorney's Office, Charleston, WV, Yvette Rivera, Office of the Comptroller of the Currency, Washington, DC, William Scott Wickline, King, Allen, Guthrie & McHugh, Charleston, WV, F. Joseph Warin, Gibson, Dunn & Crutcher, Washington, DC, Benjamin L. Bailey, Eric B. Snyder, Bailey & Glasser, Charleston, WV, for interested parties.

## MEMORANDUM OPINION

FABER, Chief Judge.

By Order dated December 31, 2003, the court denied Grant Thornton's Motion to Disqualify the Federal Deposit Insurance Corporation's ("FDIC") Expert, Douglas Carmichael (doc. # 25). The reasons for that decision follow.

### Background

Mr. Carmichael was retained by the FDIC as an expert in this case in October 2001. *See* Grant Thornton's Memorandum of Law in Support of its Motion to Disqualify, Ex. 5. Mr. Carmichael's expert report was delivered to Grant Thornton on February 14, 2003, and his supplemental report was tendered to Grant Thornton on June 2, 2003. *See* FDIC's Response to Grant Thornton's Motion to Disqualify at 4. Subsequent to beginning his work on the Keystone matter, on or about April 17, 2003, Carmichael was appointed Chief Auditor and Director of Professional Standards of the recently-created Public Companies Accounting Oversight Board ("PCAOB").[1] According to Grant Thornton, a serious conflict of interest exists between Carmichael's new position with the PCAOB and his testifying as an expert in this matter. Because of this perceived conflict, Grant Thornton has asked the court to disqualify Carmichael from testifying as an expert on behalf of the FDIC. The FDIC vigorously opposes Grant Thornton's motion.

### Analysis

■ It is well-settled that "[f]ederal courts have the inherent power to disquali-

---

1. "The PCAOB is a private-sector, non-profit corporation, created by the Sarbanes–Oxley Act of 2002, to oversee audits of public companies in order to protect the interests of investors and further the public interest in the preparation of informative, fair, and independent audit reports." Grant Thornton's Memorandum of Law in Support of its Motion to Disqualify, Ex. 1.

fy experts." *Koch Refining Co. v. Boudreaux M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996); *see also W.R. Grace & Co. v. Gracecare, Inc.*, 152 F.R.D. 61, 64 (D.Md.1993) ("The Court has the inherent power to disqualify experts. That power derives from the necessity to protect privileges which may be breached when an expert switches sides, and from the necessity to preserve public confidence in the fairness and integrity of judicial proceedings."). "Courts are generally reluctant to disqualify expert witnesses, especially those ... who possess useful specialized knowledge." *Palmer v. Ozbek*, 144 F.R.D. 66, 67 (D.Md. 1992). Accordingly, cases that grant disqualification are rare. *See Koch*, 85 F.3d at 1181; *see also United States v. Salamanca*, 244 F.Supp.2d 1023, 1025 (D.S.D. 2003) ("Nevertheless, '[d]isqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary.'"). This is so, in part, because sometimes disqualification motions are brought for purely strategic reasons. *See W.R. Grace & Co.*, 152 F.R.D. at 64. A party moving for disqualification bears a "high standard of proof" to show that disqualification is warranted. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D.Va.1990).

■ The admissibility of expert testimony in federal court is controlled by federal law, namely the Federal Rules of Evidence. *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir.1986); *Park v. City of Chicago*, 297 F.3d 606, 611 (7th Cir.2002) ("The Federal Rules of Evidence, not provisions of state law, govern the admissibility of evidence in federal court."). Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. Grant Thornton does not argue that the evidence that would be offered by Carmichael is irrelevant; accordingly, the court must look to see whether there is something in the Constitution, the Federal Rules, or the like which would compel disqualification of Mr. Carmichael.

Federal Rule of Evidence 702, the rule governing expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Grant Thornton does not contend, nor on the record before the court does it appear it could in good conscience contend, that Mr. Carmichael is not qualified to testify as an expert in this matter. *See* Grant Thornton's Reply Memorandum at 3.

According to Grant Thornton, Carmichael should be disqualified as an expert in this case because, among other things, in his new position with the PCAOB:

> (1) He will "be the Board's principal advisor as it decides which accounting firms [including Grant Thornton] are competent to continue auditing public companies and which are not."

(2) He will have "direct responsibility for investigating alleged audit failures and recommending to the Board whether disciplinary proceedings should be instituted."

(3) "If either Grant or BDO Seidman [Grant's auditing expert] incurs the wrath of Mr. Carmichael in the vigorous presentation of Grant's defense in this case, there is a risk that Mr. Carmichael may retaliate against them in carrying out his duties as Chief Auditor."

Grant Thornton's Memorandum of Law in Support of its Motion to Disqualify at 2–3. In sum, Grant Thornton contends that Mr. Carmichael's dual roles creates a conflict of interest and, at the very least, the appearance of impropriety.

The FDIC contends that Grant Thornton has "misrepresent[ed] Mr. Carmichael's duties as Chief Auditor and grossly exaggerate[d] his role in the PCAOB's supervisory and enforcement functions." FDIC's Response to Grant Thornton's Motion to Disqualify at 6. Furthermore, the FDIC contends that, prior to accepting an appointment with the Board, Mr. Carmichael "disclosed to the PCAOB that he was serving as a testifying expert witness in several matters which had progressed to the point where his withdrawal would work a substantial hardship on the parties who had hired him." *Id.* at 5. Whereupon, Mr.

Carmichael and the PCAOB agreed to a conflicts policy which would, under conditions outlined in the policy, allow Mr. Carmichael to give expert testimony in this case while in the employ of the PCAOB. *See id.* at 5–6.

As noted by the FDIC and confirmed by a review of the cases cited by the parties in their briefs, cases where an expert has been disqualified from testifying because of a conflict of interest occur where "the expert has (1) had some prior relationship with the moving party, (2) as a result of which the expert received confidential information, (3) about the case at issue that has affected or will affect the expert's opinions." *Id.* at 10. Obviously, the disqualification at issue herein does not fall into this fact pattern; there is no allegation that Mr. Carmichael had a prior relationship with Grant Thornton which would affect his opinion in this case. Accordingly, there is no reason for the court to engage in the analysis guiding disqualification decisions where there is an alleged conflict of interest.[2]

■ Distilled to its essence, Grant Thornton's motion seeks to have the court disqualify Mr. Carmichael solely because he now has a job which contains some level of oversight over the defendant.[3] Grant

---

**2.** According to the court in *Wang Laboratories, Inc. v. Toshiba Corp.,* 762 F.Supp. 1246, 1248 (E.D.Va.1991), courts should undertake a two-step inquiry:

First, was it objectively reasonable for the first party who claims to have retained the consultant to conclude that a confidential relationship existed?

Second, was any confidential or privileged information disclosed by the first party to the consultant?

Obviously, under either prong of the inquiry, Mr. Carmichael would not be subject to disqualification.

**3.** To the extent that Grant argues that Mr. Carmichael is a biased witness on behalf of

the FDIC and, therefore, subject to disqualification, it is well-settled that "[a]n expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination." *United States v. Kelley,* 6 F.Supp.2d 1168, 1183 (D.Kan.1998) (quoting 4 *Weinstein's Federal Evidence* § 702.06[8], p. 702–45 (1997)). Kelley goes on to say that "a party who is otherwise qualified as an expert may testify as an expert witness in his own case regardless of concerns that the party is plainly self-interested." *Id.* The court is confident that Grant Thornton will vigorously cross-examine Mr. Carmichael to determine if he is indeed biased.

Thornton fails to cite any legal authority which would compel such drastic action.[4] Indeed, allowing Mr. Carmichael to testify herein would not violate the Constitution, an act of Congress, the Federal Rules of Evidence, or undermine any of the privileges recognized under federal law.[5] Thus, there is no legal basis for granting Grant Thornton's motion and, accordingly, it was DENIED.

4. Such action would be especially drastic in this case given the substantial delay in trial it would cause.

5. Grant Thornton also argues that Mr. Carmichael's appearance in this matter will violate the PCAOB's subpoena requirement. Whether Mr. Carmichael's testimony herein contravenes the rules governing his employment is of no concern to the court and, as a term or condition of employment, is best dealt with by his employer, the PCAOB.