620 S.E.2d 162

**STATE of West Virginia ex rel. Belinda Billups, as Guardian and Next Friend of Jacob Billups, an Infant, Belinda Billups, and Randy Billups, Individually, Petitioners,**

v.

**The Honorable Russell M. CLAWGES, Jr., Judge of the Circuit Court of Monongalia County, West Virginia; West Virginia University Hospital, Inc., a West Virginia Corporation, DBA West Virginia University Hospitals, DBA West Virginia University Children's Hospital; Raleigh General Hospital, a West Virginia Corporation, DBA Columbia Raleigh Hospital; Saraswathi Mohan, M.D.; and Petaiah Mohan, M.D., Respondents.**

No. 32513.

Supreme Court of Appeals of West Virginia.

Submitted April 6, 2005.

Decided May 26, 2005.

Marvin W. Masters, Charles M. Love, IV, The Masters Law Firm, LC, Charleston, for the Petitioners.

William F. Foster, II, The Foster Law Firm, PLLC, Charleston, for the Respondent, WVU Hospital, Inc.

Paul T. Farrell, Farrell, Farrell & Farrell, LC, Huntington, for the Respondent, Raleigh General Hospital.

D.C. Offutt, Jr., Perry W. Oxley, David E. Rich, L.R. Sammons, III, Offutt, Fisher & Nord, Huntington, for the Respondents, Saraswathi Mohan, M.D., and Petaiah Mohan, M.D.

## PETITION FOR A WRIT OF PROHIBITION

ALBRIGHT, Chief Justice.

Plaintiffs below, Belinda Billups, individually and as guardian and best friend of Jacob Billups, and Randy Billups (hereinafter referred to collectively as "Petitioners"), seek a writ prohibiting the Circuit Court of Monongalia County from enforcing an order which would permit the defendants below to retain as an expert witness a doctor whom Petitioners previously had engaged in the same action. Raleigh General Hospital (hereinafter referred to individually as "Raleigh General"), Saraswathi Mohan, M.D. and Petaiah Mohan, M.D.,[1] being three of the defendants below, argue against issuance of the writ. Upon completion of our review of the law, arguments of the parties and relevant record,

---

1. Collectively referred to hereinafter as "Respondents."

we decline to provide the relief requested for the reasons explained herein.

## I.  Factual and Procedural Background

Investigating the possibility of filing a malpractice lawsuit, Petitioners' counsel contacted Dr. Stanford Schulman, an expert in the field of Kawasaki Disease,[2] on May 7, 2003, to request that the doctor review the medical records of Jacob Billups. According to Petitioners' counsel, a summary of the medical treatment received by Jacob Billups was sent to Dr. Schulman after he agreed to conduct the review, and phone conversations were held on May 9 and May 12, 2003, with Petitioners' counsel and a nurse paralegal employed by the same law firm. Petitioners contend that the exchanges of information between the doctor and their legal advisors involved privileged communications. On May 12, 2003, Dr. Schulman informed Petitioners' counsel that his review did not support the issuance of a medical screening certificate of merit pursuant to the provisions of West Virginia Code § 55–7B–6 (2003) (Supp. 2004).[3] This certificate was later procured by Petitioners from a Dr. Leonard Steinfeld on May 20, 2003. The certificate of merit along with the statutorily required notice of claim were mailed on May 27, 2003, to the health care providers named in the suit and the case was first filed on June 25, 2003. We are advised that the initial suit was dismissed upon defense motion, but virtually the same action was refiled on January 8, 2004, accompanied by the same notice of claim and certificate of merit used in the first instance.

Raleigh General Hospital, one of the health care providers named as a defendant in this suit, independently located Dr. Schulman as a Kawasaki Disease expert and retained the doctor in February 2004 to review the medical records in the case. Shortly after receiving the records, Dr. Schulman telephoned Raleigh General's counsel to inform counsel that he had previously reviewed the same medical records for a plaintiff's law firm in West Virginia and that the doctor had given them a negative review. Raleigh General's counsel terminated the consultation with Dr. Schulman and has had no further contact with the doctor except to advise the doctor that the matter of his continued participation was a court determination.

Concurrently, counsel for Raleigh General notified Petitioners' counsel about the contact with Dr. Schulman and of Raleigh General's desire to retain the doctor as an expert. Petitioners objected and Raleigh General filed a motion with the lower court in order to determine whether it would be proper under the circumstances for Raleigh General to retain Dr. Schulman as its expert.

A hearing on the motion was held before the lower court on May 20, 2004. On June 7, 2004, Petitioners disclosed under Rule 26(b)(4)(B) of the West Virginia Rules of

---

**2.**  "Kawasaki disease is a rare condition in children that involves inflammation of the blood vessels ... [and] is usually accompanied by a fever ...." U.S. National Library of Medicine and the National Institutes of Health, *Medline-Plus Medical Encyclopedia* <*http://www.nlm.nih.g ov/medlineplus/ency/ article/000989.htm*> (April 22, 2005).

**3.**  The relevant portion of West Virginia Code § 55–7B–6 reads as follows:

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to

whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

Civil Procedure[4] that Dr. Steinfeld would be their trial expert and Dr. Schulman was their "non-testifying expert."[5] The disclosure was followed by the filing on June 11, 2004, of Petitioners' "Motion to Prohibit Defendant's Retention of Dr. Stanford Schulman as an Expert Witness." In support of their motion, Petitioners argued that their counsel and a nurse paralegal working for the same law firm had disclosed to Dr. Schulman a confidential summary of the medical treatment at issue and discussed the theory of the case in great detail. Affidavits, created by petitioners' counsel and paralegal a year after the consultation with Dr. Schulman, were submitted to the court below with Petitioners' motion and placed under seal for in camera review.

The lower court issued an order on August 20, 2004. Observing that the issue before it was a new question of law, the court below first adopted the test proposed by the parties which other jurisdictions have used to decide similar disqualification questions. After applying the test, the court below concluded in its August 20, 2004, order that although the court had "the inherent power to disqualify Dr. Schulman, the Plaintiffs have not met the high standard of proof necessary to overcome the Court's reluctance to disqualify Dr. Schulman." Accordingly, the motion to prohibit the retention by the defense of Dr. Schulman as an expert witness was denied. In an effort to bar implementation of the adverse order, the plaintiffs below filed a writ of prohibition with this Court on December 16, 2004, from which we issued a rule to show cause on January 19, 2005.

## II. Standard of Review

▆▆▆ We approach the issues presented in this case mindful that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). Elaborating on this standard of review in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we said:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III. Discussion

▆▆▆ Typically, the decision regarding disqualification of an expert witness rests within the sound discretion of the trial court. *State v. LaRock*, 196 W.Va. 294, 306, 470 S.E.2d 613, 625 (1996). Thus our review in most instances is restrained and the lower court's decision will stand unless there is an abuse of discretion. *Id.* However, as the

---

**4.** This designated portion of Rule 26 provides that:

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

**5.** As a scheduling order was not entered until September 28, 2004, Petitioners' experts were prematurely disclosed.

lower court observed, this Court through its opinions, the West Virginia Rules of Evidence or Rules of Civil Procedure has not directly addressed the issue of under what circumstances disqualification of an expert witness is warranted where the parties disagree about whether confidential information was communicated when that expert previously conferred with an opposing party in the same or related suit. As such, we proceed initially with a de novo review of the question of law raised in the petition. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

The parties mutually urge us to uphold the lower court's adoption of the two-part test employed by the majority of courts who have examined the issue of expert witness disqualification in this context. These courts have rejected a rigid solution to the expert disqualification problem and instead have opted to apply a two-prong test which balances the interests at stake.[6] Observing that the principal aim of trial courts in reviewing expert witness disqualification motions is the protection and preservation of the integrity and fairness of judicial proceedings, the court in *Great Lakes Dredge & Dock Co. v. Harnischfeger Corporation*, 734 F.Supp. 334 (N.D.Ill. 1990), summarized the interests that the courts must weigh:

6. *See e.g. Koch Refining Co. v. Jennifer L. Boudreau MV*, 85 F.3d 1178 (5th Cir.1996); *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. 1498 (D.Colo.1993); *Mayer v. Dell*, 139 F.R.D. 1 (D.D.C.1991); *Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*, 734 F.Supp. 334 (N.D.Ill.1990); *Palmer v. Ozbek*, 144 F.R.D. 66 (D.Md.1992); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D.Ohio 1988); *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D.Va.1991); *Grant Thornton, LLP v. F.D.I.C.*, 297 F.Supp.2d 880 (S.D.W.Va.2004); *Mitchell v. Wilmore*, 981 P.2d 172 (Colo.1999); *Nelson v. McCreary*, 694 A.2d 897 (D.C.1997); *Roundpoint v. V.N.A. Inc.*, 207 A.D.2d 123, 621 N.Y.S.2d 161 (1995); *Ambrosia Coal and Construction Co. v. People's Bank of Western Pennsylvania*, 2002 WL 31097927 (Pa.2002); *Formosa Plastics Corp., USA v. Kajima Intern., Inc.*, 2004 WL 2534207 (Tex.App.2004); *Turner v. Thiel*, 262 Va. 597, 553 S.E.2d 765 (2001).

7. We have found two jurisdictions employing a minority rule which does not require an affirmative response to both questions. In these jurisdictions, the analysis used is similar to the standards governing conflict of interest involv-

On the one side is the party's interest in protection of confidential communications or other privileged matter. On the other side is the opposing party's right to retain those persons it feels are needed to prosecute its case. Also, at issue is the interest of experts to seek employment.

*Id.* at 336–37. The *Great Lakes* court thereafter adopted the balancing-of-interests approach set forth in *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D.Ohio 1988), and later framed by the court in *Wang Laboratories, Inc. v. Toshiba Corporation*, 762 F.Supp. 1246 (E.D.Va.1991), as the following two-part inquiry:

First, was it objectively reasonable for the first party who claims to have retained the consultant [previously] ... to conclude that a confidential relationship existed?

Second, was any confidential or privileged information disclosed by the first party to the consultant?

*Id.* at 1248 (citations omitted).

Courts adopting the balancing-of-interests approach have placed the burden of proving the test elements on the party seeking disqualification. Additionally, the majority of courts hold that disqualification of an expert witness is indicated only when both questions are answered in the affirmative.[7] As explained by the court in *Wang*:

ing attorneys, that is, once it is established that it was objectively reasonable to conclude a confidential relationship existed then there is a rebuttable presumption that confidential or privileged information was disclosed. *See Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 591 (D.Minn.1986); *Conforti & Eisele, Inc. v. Division of Bldg. & Const.*, 170 N.J.Super. 64, 405 A.2d 487, 490 (1979). Thus, in those jurisdictions only the first part of the test requires an affirmative response and once that is obtained then the burden of proof shifts to the party opposing disqualification. The majority view, with which we agree, is that the distinctly different roles performed or purposes satisfied by experts and attorneys in litigation justify the different disqualification standards. *See e.g. English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. 1498, 1501 (D.Colo.1993); *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1250 (E.D.Va.1991); *Mitchell v. Wilmore*, 981 P.2d 172, 175 (Colo.1999) (overruling adoption of minority view in *City of Westminster v. MOA, Inc.*, 867 P.2d 137 (Colo.App.1993)).

[D]isqualification is likely inappropriate if either inquiry yields a negative response. Thus, even if counsel reasonably assumed the existence of a confidential relationship, disqualification does not seem warranted where no privileged or confidential information passed. Were this not so, lawyers could then disable potentially troublesome experts merely by retaining them, without intending to use them as consultants. Lawyers using this ploy are not seeking expert help with their case; instead, they are attempting only to prevent opposing lawyers from obtaining an expert. This is not a legitimate use of experts, and courts should not countenance it by employing the disqualification sanction in aid of it.

Similarly, disqualification should not occur in the absence of a confidential relationship even though some confidential information may be disclosed. In this event, the disclosure is essentially a waiver of any existing privilege. Lawyers bear a burden to make clear to consultants that retention and a confidential relationship are desired and intended.

*Wang,* 762 F.Supp. at 1248 (internal citations and footnotes omitted). We find this reasoning persuasive and accordingly hold that in cases where disqualification of an expert witness is sought, the party moving for disqualification bears the burden of proving that at the time the moving party consulted with the expert: (1) it was objectively reasonable for the moving party to have concluded that a confidential relationship existed with the expert; and (2) confidential or privileged information was disclosed to the expert by the moving party. Disqualification is warranted only when the evidence satisfactorily demonstrates the presence of both of these conditions.

■ Finding no error in the law employed by the lower court, we next examine the lower court's application of the law to the facts in this case to determine if there was an abuse of discretion. As to the first inquiry, we observe that Petitioners' counsel reached agreement with Dr. Schulman to evaluate the medical records of Petitioners' son for the purpose of assisting with a medical malpractice claim against Respondents and other health care providers. Dr. Schulman reviewed the medical records forwarded to him by Petitioners' counsel. Dr. Schulman spoke with both a lawyer and paralegal from the law firm representing Petitioners before he finally concluded that the record showed that the proper standard of care was provided. We agree with the lower court's findings that these facts and actions demonstrate that it was objectively reasonable for Petitioners to *conclude that a confidential relationship had* existed with the doctor during the consultation period.

■■ We turn now to consider whether the lower court correctly reviewed the evidence involving the second prong of the test. Petitioners claim that the lower court was incorrect in finding that no confidential information was disclosed to Dr. Schulman because sealed documents in the record reveal that Dr. Schulman was privy to such details as Petitioners' theory of the case, the weaknesses of each side's case and other mental impressions of their legal advisors. While we obviously are not at liberty to reveal the contents of the sealed documents, upon completion of our review of the documents we are in agreement with the lower court's conclusion that "[m]ost, if not all, of the information contained in those submissions, is contained in the medical records of the infant Plaintiff, the notice of claim, the screening certificate of merit, Plaintiffs' *Complaint* and other pleadings ... or would be discoverable under the Rules of Civil Procedure." [8] This being the case, the second condition of the test herein announced is not satisfied. Consequently, we find no abuse of discretion by the lower court in applying the law to the facts of this case, as well as no basis to issue a writ of prohibition in order to force the disqualification of Dr. Schulman as an expert witness for Respondents.[9]

---

**8.** This opinion has no effect on the confidentiality inherent in medical records and protected patient health information.

**9.** We pause briefly to express concern with the prejudicial effect which may result when experts not disqualified from serving as witnesses under circumstances similar to those presented in this case are asked to reveal or are questioned at trial

## IV. Conclusion

Finding that the Circuit Court of Monongalia County did not exceed its legitimate powers in this matter, we deny the relief in prohibition requested.

Writ denied.

about the prior consultation with the adverse party. Trial courts in these circumstances would be well served to expressly caution against making inappropriate reference to the prior consultation.