# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

State of West Virginia,
Plaintiff Below, Respondent

vs.)  No. 19-0299 (Marion County CC-24-2018-F-70)

James H.,
Defendant Below, Petitioner

**FILED**
**April 20, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James H., by counsel D. Conrad Gall, appeals the Circuit Court of Marion County's January 18, 2019, order denying his post-trial motions and imposing sentence following his convictions of twelve counts of sexual abuse and twelve counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child. Respondent the State of West Virginia, by counsel Scott E. Johnson, filed a response to which petitioner submitted a reply.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was arrested on August 4, 2017, and charged with twenty-two counts of sexual abuse by a parent, guardian, custodian or person in a position of trust and twenty-two counts of first-degree sexual abuse of petitioner's granddaughter, S.C. The alleged criminal conduct occurred in 2016 and 2017, and S.C.'s mother contacted her child's counselor on April 27, 2017. After conducting sessions on April 28 and May 3, 2017, the counselor advised the mother to contact the Department of Health and Human Resources ("DHHR"), who contacted the sheriff's department. On May 4, 2017, S.C. was interviewed by the sexual assault nurse examiner at United Hospital Center, where she reiterated the original allegations that her grandfather touched her inappropriately while engaged in a "tickle game." S.C. was also interviewed at the Marion County Child Advocacy Center ("CAC"), at which time she made two new allegations that petitioner had gone into her bedroom closet and exposed his penis to her, including having her touch his penis twice.

The State moved to dismiss counts twenty-five through forty-four of the indictment, and the circuit court granted that motion.[1] Petitioner was tried before a jury in December of 2018, and

---

[1] The State's motion to dismiss these counts does not indicate the reason for request to dismiss.

1

the jury convicted him of counts one through twenty-four of the indictment. Thereafter, petitioner filed the following motions: motion for a new trial, motion for post-verdict judgment of acquittal, motion in arrest of judgment, and renewed motion for post-conviction bond. By order entered on January 18, 2019, the circuit court denied all of those motions. Thereafter, the circuit court entered its sentencing order on February 25, 2019, sentencing petitioner to imprisonment for not less than five nor more than twenty-five years for each count of first-degree sexual abuse (the odd numbered counts) and not less than ten nor more than twenty years for each count of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child (the even numbered counts), in addition to fines. Each of the terms of imprisonment for first-degree sexual abuse were ordered to run consecutively to one another, and the same is true for the sexual abuse by a parent, guardian, custodian or person in a position of trust to a child sentences. However, the sentences on the odd numbered counts are to run concurrently to the sentences on the even numbered counts. In addition, upon release, petitioner was ordered to serve twenty years of supervised release. Petitioner appeals from these orders.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000).

On appeal, petitioner sets forth nine assignments of error. However, many of petitioner's arguments do not comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. That rule provides that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . . ' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

2

## A. Ineffective assistance of counsel and prosecutorial misconduct

Petitioner first asserts "ineffective assistance of counsel or prosecutorial misconduct as to witness Denver Grace," arguing that the facts for those arguments "are identical[.]" Petitioner sets forth the alleged factual basis for these assertions, explaining that Mr. Grace was S.C.'s mother's boyfriend during the relevant time period.[2] However, in doing so, he only cites to the criminal complaint, which does not support his factual assertions.[3] He complains that "[t]he unavailability of Mr. Grace for [petitioner] created a significant weakness in [his] case when questioning was limited to the [d]etective who was involved and could not question Mr. Grace." However, he fails to set forth any analysis as to this contention. Further, although petitioner claims that his trial counsel was ineffective, his trial counsel is also his appellate counsel who now appears to claim that his own work was insufficient. While he points to the ineffective assistance of counsel standards set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), he simply asserts that "[t]he net effect of not having Mr. Grace at the [t]rial either by [petitioner's] counsel's ineffectively not obtaining an out-of-state [s]ubpoena or the State misrepresentation and misconduct significantly affected [petitioner's] defense by not raising the issue of recanting and the threats to create reasonable doubt."

Petitioner's argument is not set forth in accordance with Rule 10(c)(7). In addition, we have held that "[i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal." Syl. Pt. 10, in part, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). As we have explained, "the preferred way of raising ineffective assistance of . . . counsel is to file a subsequent petition for a writ of habeas corpus raising the issue in the court below." *Watts v. Ballard*, 238 W. Va. 730, 735-36 n.7, 798 S.E.2d 856, 861-62 n.7 (2017) (internal quotations and citation omitted). Consequently, "we decline to address an alleged ineffective assistance of counsel claim in this direct appeal. The record has not been developed on this issue. This is an issue that must be developed in a habeas corpus proceeding." *State v. Richardson*, 240 W. Va. 310, 319-20 n.13, 811 S.E.2d 260, 269-70 n.13 (2018). Thus, we cannot find that the circuit court erred in denying petitioner's post-trial motions on these grounds.

## B. Dr. Christy Glass, the victim's pediatrician

Petitioner next argues that Dr. Christy Glass failed to appear at trial and petitioner was unable "to introduce photos and other evidence." Again petitioner cites to only two pages of the appendix record, pages seven and ten to support this argument. Page seven is the first page of the

---

[2] Without citing to the record or in any way supporting the contention, petitioner claims that when Mr. Grace and S.C.'s mother ended their relationship, Mr. Grace contacted petitioner and his wife to inform them that S.C. had recanted her allegations. However, when Mr. Grace spoke to the prosecuting attorney, "he was intoxicated and did not recall his conversation" with petitioner and his wife.

[3] The two-page criminal complaint, the only pages referenced by petitioner in this section of argument, does not address or mention Mr. Grace.
(continued . . .)

3

criminal complaint that does not support petitioner's assertion that S.C. had a severe skin condition as indicated by the photos petitioner listed as an exhibit to which the State objected.[4] In addition, he cites to page ten for the proposition that the circuit court refused to allow the admission of photographs. However, page ten is a part of the criminal complaint that does not address photographs or any ruling by the circuit court. Therefore, we decline to address the merits of petitioner's second assignment of error.

### C. Dr. Saar, the State's expert witness

Petitioner then argues that the circuit court erred by allowing the State's expert witness, Dr. Timothy Saar, to sit through the entire trial, rather than requiring that he be sequestered. Petitioner also argues that because Dr. Saar consulted with petitioner, petitioner's wife, and petitioner's trial counsel before he was contacted by the State, his testimony is, at a minimum, tainted because he was given an insight into petitioner's defense. Petitioner contends that while he "cannot find a specific rule, Rule 1.7 of the Rules or Professional Conduct for Attorneys would exclude this." He further contends that Dr. Saar was allowed to sit through and listen to all of the trial testimony while his expert, Dr. Deryn Strange, was required to testify via Skype and could not attend the entire trial. While petitioner properly cites to the appendix regarding Dr. Saar speaking with petitioner's wife and counsel, he fails to cite to the record for any of his contentions regarding Dr. Strange. Further, his argument regarding Dr. Strange does not comply with Rule 10(c)(7) because he did not cite a single case, rule, or statute in support of that argument. Therefore, we will address only his argument regarding Dr. Saar's interaction with petitioner's wife and counsel.

In ruling on the issue, the circuit court considered our holding in syllabus point 3 of *State ex rel. Billups v. Clawges*, 218 W. Va. 22, 620 S.E.2d 162 (2005):

> In cases where disqualification of an expert witness is sought, the party moving for disqualification bears the burden of proving that at the time the moving party consulted with the expert: (1) it was objectively reasonable for the moving party to have concluded that a confidential relationship existed with the expert; and (2) confidential or privileged information was disclosed to the expert by the moving party. Disqualification is warranted only when the evidence satisfactorily demonstrates the presence of both of these conditions.

Further, the decision regarding disqualification of an expert witness rests within the sound discretion of the trial court. *Id.* at 26, 620 S.E.2d at 166 (citing *State v. LaRock*, 196 W. Va. 294, 306, 470 S.E.2d 613, 625 (1996)). "Thus, our review in most instances is restrained and the lower court's decision will stand unless there is an abuse of discretion." *Billups*, 218 W. Va. at 26, 620 S.E.2d at 166.

Prior to Dr. Saar's trial testimony, the circuit court conducted an in camera hearing before ruling on petitioner's motion to disqualify Dr. Saar "filed just a few days" prior. During that

---

[4] It is unclear from petitioner's brief what skin condition is at issue, which is compounded by his failure to cite to the correct pages in the record.

hearing, Dr. Saar testified that he had no recollection of speaking with petitioner's counsel or wife prior to being retained by the State. However, after being notified by the State of a potential issue, Dr. Saar's secretary researched and found that Dr. Saar had spoken to petitioner's wife and encouraged her to have petitioner's attorney call him. He testified that

> [a]pparently, I took the call and gave her some general opinions and told her to have her lawyer contact me. This is based on what [petitioner's counsel] had informed me. And then when he and I spoke again, he had stated he had contacted my office and asked if I was basically a memory expert, per se. At that time I said I was not, more with regards to disclosures. And that's the last I think he and I communicated until I contacted him after I was reminded about the case. . . . I don't have a recollection. When he and I spoke the second time, it was more of he had said that he would get back to our office if they chose to utilize our services, if they were unable to find somebody who specialized in memory. . . . [T]here was never any engagement with regard to a contract signed or any type of therapeutic relationship certainly with [petitioner's wife]. It was just kind of a fact-finding mission. We get quite a few of those where people call and want to know what services we provide. . . . At that time, and actually since I did not recall our conversations until after all the information was received and my opinion was formulated, I don't see how it could negatively impact my opinion.

It is clear from Dr. Saar's testimony that he had no independent recollection of speaking with petitioner's wife or counsel prior to being retained by the State or formulating his opinion. Thus, it is apparent from Dr. Saar's testimony that the circuit court did not abuse its discretion in finding that petitioner failed to prove that it was objectively reasonable for petitioner, his wife, or his attorney to conclude that confidential, privileged information was disclosed to Dr. Saar.

### D. Alleged 404(b) evidence

Petitioner's fourth assignment of error is that the circuit court erred by allowing the introduction of "evidence of [petitioner's] alleged affair through telephonic conversations after the court expressly prohibited this i[n] a pre-trial order and allegations of multiple counts for which [petitioner] was not tried and prosecutorial misconduct for doing so." Petitioner looks to his alleged motion to prohibit the introduction of Rule 404(b) evidence, particularly the affair, but he fails to point this Court to the location of that motion or the resulting circuit court order in the record.[5] Without explaining who Dr. Edward Baker is, petitioner states that "even at the trial when the defense objected to portions of Dr. Edward Baker's report being introduced that had the allegation of the affair in it the [c]ourt required that the State redact it." Continuing to fail to cite to the record, petitioner says that the State filed a motion to introduce the audio-taped transcripts of petitioner's conversations with his wife but petitioner objected to that motion. He further contends that the "remaining facts of 404[(b)] relates[sic] to the allegation the [p]etitioner committed acts that were dismissed . . . and allegations that were never actually [i]ndicted when questioning the alleged victim." Failing to cite any authority, he asserts that the purpose of Rule 404(b) is essentially to

---

[5] Rather than citing to the order at issue, he again cites to one page of the criminal complaint.

5

prevent the introduction of other bad acts committed by a defendant to suggest to a jury that if he did the other bad acts before, he must have committed the contested offense. He is also critical of the State's inquiry of S.C. as to how many times certain types of conduct occurred, which he contends was never res gestae nor warranted for any purpose other than to prejudice petitioner.

Again, petitioner has failed to comply with Rule 10(c)(7). In addition, when the State questioned petitioner's wife inquiring whether truth was a frequent emphasis of her calls with petitioner, she responded, "Yes. Because he had to tell me that he had a girlfriend . . . Because I did not know. And that's how I talk to him. When I want to know something, that's how I talk to him." The State followed up with an unclear question of "[w]hat dropped you down to 50?" Petitioner's wife responded, "The girlfriend. He had to tell me about his girlfriend, and that did it."[6] At that point, petitioner's counsel objected "to this line of questioning" without presenting further detail or argument. As this Court has found, "[g]eneral objections are ordinarily not sufficient to preserve the error for appellate review . . . ." *State v. Johnson*, 179 W. Va. 619, 628, 371 S.E.2d 340, 349 (1988). This Court has also found as follows:

> "General objections are not favored under W.Va.R.Evid. 103(a)(1)." *Hanshaw v. Hanshaw,* 180 W.Va. 478, 479 n. 1, 377 S.E.2d 470, 471 n. 1 (1988). Moreover, this Court has recognized:
>
>> A *general objection overruled* [italics in original] is of small value to the objector on appeal. . . . The rationale of this rule is that the proponent of the evidence should be given an opportunity to meet the objection by reframing the question, laying the necessary foundation, or by other means. A general objection does not offer him this opportunity. Thus, the objector in most instances will lose his rights on appeal by failing to take further action after his general objection has been overruled.
>
> *State v. McFarland,* 175 W.Va. 205, 220, 332 S.E.2d 217, 232 (1985) (quoting F. Cleckley, *Handbook On Evidence for West Virginia Lawyers* § 18.B.3.c(2) at 91 (1978)).

*Craighead v. Norfolk and W. Ry. Co.*, 197 W. Va. 271, 280, 475 S.E.2d 363, 372 (1996). Based upon the transcript, it is unclear why petitioner's counsel objected to this "line of questioning" so this Court cannot determine whether the circuit court properly overruled petitioner's general objection. As we have previously set forth,

> [t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

---

[6] It is unclear from the transcript what the State meant by "dropped you down to 50[.]"

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995). Employing these standards, we find that petitioner has failed to show that the circuit court abused its discretion in overruling petitioner's general objection at issue.

Further, the circuit court found that petitioner's other acts of sexual misconduct toward S.C. were "part and parcel" of the sexual misconduct for which petitioner was convicted, finding that the evidence was res gestae evidence, rather than Rule 404(b) evidence. This Court has explained that

> [s]yllabus point 1 of *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978), holds: "Other criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." *Accord* syl. pt. 8, *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004); syl. pt. 4, *State v. Hager*, 204 W.Va. 28, 511 S.E.2d 139 (1998); syl. pt. 2, *State v. McGhee*, 193 W.Va. 164, 455 S.E.2d 533 (1995). *See State v. McKinley*, 234 W.Va. 143, 155, 764 S.E.2d 303, 315 (2014) ("Events, declarations and circumstances which are near in time, causally connected with and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." (citation omitted)).

*State v. McDaniel*, 238 W. Va. 61, 69, 792 S.E.2d 72, 80 (2016). Thus, we find that the circuit court did not abuse its discretion in permitting the admission of the res gestae evidence complained of by petitioner.

### E. The victim's statements allegedly contradicted the discovery

Petitioner next argues that S.C.'s statements were inconsistent and contradictory with discovery and "coached by the State[.]" Without citing to the record, petitioner asserts that the original complaint to the DHHR concerned a "tickle game" through S.C.'s clothing and that the CAC interview was not conducted until eight days later. He is critical of the CAC interview's reassuring comment to S.C. of "good job," but he fails to explain why that comment is important. While he contends that S.C. was counseled two times during that eight-day period, the page of testimony he cites does not support that assertion. He then sets forth a number of other facts without citing to the record before again citing the first page of the criminal complaint, contending that it "clearly states this action occurred on December 27, 2016, which is consistent with the original interviews." He does not, however, address any other dates, so it is unclear what assertion he is making regarding the date or dates of his offenses. Petitioner also points to other counseling S.C. had with a different counselor, but without support from the record he contends that "her parents continued to encourage her to add allegations" and that she was "being rewarded for her victimization . . . ." He then draws this Court's attention to the assistant prosecutor's statement that he had "to prepare and assist" the victim with her testimony without setting forth any argument or analysis regarding that statement. Without identifying who "Robert and Miss Kim" are, he says that S.C. stated she had several long talks with those individuals, again without setting forth any argument or analysis.

Petitioner's brief on this point is particularly unclear, and it is questionable, at best, whether it complies with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. To the extent that his argument is a sufficiency of the evidence argument,

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. pt. 3, [*State v.*] *Guthrie*[, 194 W. Va. 657, 461 S.E.2d 163 (1995).]

*State v. Benny W.*, __ W. Va. __, __, 837 S.E.2d 679, 688 (2019). Further, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .' [*Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995)] (internal quotations and citations omitted)." *Teubert Family Farms, LLC v. Bragg*, __ W. Va. __, __, 836 S.E.2d 412, 416 (2019). Petitioner's largely unsupported string of facts, without real argument or analysis, fails to satisfy the heavy burden of a sufficiency of the evidence argument.

### F. The victim's allegedly false memory

In his sixth assignment of error, petitioner argues "false memory of the victim after being encouraged and rewarded for adding incidents after the criminal complaint and indictment." He asserts that Dr. Strange testified that S.C.'s testimony was consistent with false memory and provided detailed testimony as to how people can believe something happened that did not. However, he once again fails to cite to the record for that alleged testimony. Citing a single page of Dr. Strange's testimony, petitioner contends that she "cited specific examples where her physical presence would have made an impact on the case," but the page of testimony does not address that issue. She did, however, testify that children of S.C.'s age "are perhaps the most suggestible verbal people. . . . So you see a heightened suggestibility in young people." Dr. Strange also testified about confirmation bias, which she explained was "[w]hen an adult asks questions of a child in a directed way where they have an existing belief about what may have happened" explaining that that "can lead to a very biased interviewing procedures[sic] which in turn can lead a child in particular into developing memory distortion for what actually happened in their past." He also asserts that Dr. Strange concluded that there were suggestive influences present in this case that could have led to the development and maintenance of a distorted memory over time, but he fails to cite to the record for that alleged conclusion. Petitioner also contends that Dr. Strange's assertions were not rebutted by Dr. Saar or any other witness.

As this Court has stated previously,

[t]he testimony of expert witnesses on an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to the weight and credibility of such testimony.

*Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 559, 814 S.E.2d 205, 222 (2018) (quoting Syl. Pt. 2, *Papenhaus v. Combs*, 170 W. Va. 211, 292 S.E.2d 621 (1982). The jury heard the testimony and considered the evidence, and petitioner does not argue that the circuit court erred in any way related to this evidence. Therefore, it is unclear what petitioner seeks from this Court regarding this allegation of error.

### G. Counts 17 and 18 of the indictment

Petitioner's seventh assignment of error is that there was no specific evidence introduced at trial to support counts 17 and 18 of the indictment. Once again failing to cite to the record, petitioner asserts that both he and the jury questioned the significance of these counts, as they are the only counts that allege that specific acts occurred during a specific time over a thirty-day period, while the other counts allege that incidents occurred between September and April. He cites page fourteen of the record in support of his contention that the jury

was also confused as to why only these [two c]ounts had a specific date of March and none of the other [c]ounts had a specific time frame and asked the [j]udge by note sent from the jury room . . . which was answered by the [j]udge placing his initials . . . at the end of the answer.

However, that page of the record is actually a page in the criminal complaint that does not support petitioner's assertions so he has, again, failed to comply with Rule 10(c)(7). Further, he contends that there was "virtually no testimony" regarding anything occurring in March, as the CAC interview referred to times near Halloween and Christmas.[7] Citing *State v. Davis*, 139 W. Va. 645, 81 S.E.2d 95 (1954), he argues that because the evidence was insufficient, the guilty verdict must be set aside.

As set forth above, a defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden, and this Court reviews all the evidence in the light most favorable to the prosecution. *Benny W.*, __ W. Va. at __, 837 S.E.2d at 688. Both of these counts provide that the conduct at issue occurred "on or about a day in March, 2017." The State does not dispute that it must prove all elements of the crime beyond a reasonable doubt. However, it argues that the "date of the offense is not an element of the crime [so] the State was not required to prove the offense occurred on the date alleged in the charging instrument." Count seventeen of the indictment, sexual abuse in the first degree pursuant to West Virginia Code § 61-8B-7(a)(3) and

---

[7] Petitioner cites only two cases in support of this argument, one of which is inapplicable to this case, as it specifically addresses findings of a trial court when "a case tried by [a trial court] in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong . . . ." Syl. Pt. 1, in part, *Bettinger v. Bettinger*, 183 W. Va. 528, 396 S.E.2d 709 (1990) (citations omitted). The instant case was tried before a jury.

(c), provides that the grand jurors charge petitioner with sexual abuse in the first degree by unlawfully and feloniously subjecting another person to sexual contact "to wit: by subjecting S.C., a child younger than twelve years of age, to sexual contact, by intentionally touching the vagina of S.C., in violation of W.Va. Code § 61-8B-7(a)(3) & (c), against the peace and dignity of the State." Similarly, count eighteen charged petitioner was sexual abuse by a parent, guardian, custodian or person in a position of trust pursuant to West Virginia Code § 61-8D-5(a),

> to wit: by subjecting S.C., his granddaughter, a child under the age of eighteen years, to sexual contact, by intentionally touching the vagina of S.C., while [petitioner] was the parent, guardian or custodian to said child who was under his care, custody, or control, in violation of W.Va. Code § 61-8D-5(a), against the peace and dignity of the State.

It is clear from the indictments that the date of "on or about" a date in March of 2017 was not an element of the crimes charged in those counts. Further, the other counts charged petitioner with conduct occurring "between September 1, 2016, and April 27, 2017," which encompasses March of 2017, in addition to dates shortly before and after March of 2017. Due, in part, to petitioner's failure to comply with Rule 10(c)(7), he failed to demonstrate any type of jury confusion regarding these counts. Based on the facts of this case, we find that petitioner has not satisfied his heavy burden necessary to show that the evidence was insufficient to support his convictions on these counts.

## H. The denial of petitioner's motion for a directed verdict

Petitioner's next assignment of error is that the circuit court failed to consider and grant his motion for directed verdict related to his alibi when the State allegedly failed to present rebuttal evidence. He also contends that S.C. alleged that the abuse occurred over Christmas break in late 2016 through early 2017. However, petitioner introduced evidence at trial that from December 20, 2016, through December 30, 2016, he and his wife were on vacation in Texas; that evidence included photos and airline tickets. Without citing to the record, petitioner further contends that "the children were not being cared for by [p]etitioner from mid-December when [their] mother . . . . got out of nursing school until she returned to school in mid-January." Without citing to the record, petitioner asserts that he requested a bill of particulars "to ascertain when, where, and what occurred to mount his defense" and that the State did not introduce testimony to refute petitioner's alibi.[8] Citing *Guthrie*, he asserts "[i]t is the State['s] . . . burden to prove beyond a reasonable doubt. The [j]ury cannot simply infer guilt, and must make a prima fascia[sic] case that, in a light most favorable to the State, would allow a jury to infer guilt."

Petitioner appears to be confusing the various standards at issue. We have found that

---

[8] He also briefly discusses an alleged assault "in granny's car when [p]etitioner's vehicle was in the shop[,]" though he fails to cite the record or any law regarding that argument so we decline to address it.

10

"'[u]pon a motion [for judgment of acquittal], the evidence is to be viewed in the light most favorable to [the] prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West*, 153 W.Va. 325, [168 S.E.2d 716] (1969)." Syl. pt. 1, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974).

Syl. Pt. 5, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009). Petitioner's wife testified as to the flight itinerary for her trip with petitioner in December of 2016. Therefore, that information was presented to the jury. However, as set forth above, this Court "must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *Benny W.*, __ W. Va. at __, 837 S.E.2d at 688. Petitioner does not argue that there was insufficient evidence upon which a jury might justifiably find him guilty beyond a reasonable doubt, particularly when viewing the evidence in the light most favorable to the State. Therefore, we find that the circuit court did not err in denying petitioner's motion for a judgment of acquittal.

## I. Jury instructions and verdict forms

Finally, petitioner argues that "the instructions and verdict forms were so vague that neither [petitioner] nor the jury could ascertain which count related to which incident and where such occurred such that [petitioner] had no reasonable ability to assert a defense." Petitioner is critical of the verdict form, but he fails to point to that form in the record. He also fails to cite to the record to support his assertion that "[t]he language in the instructions was vague such that no one could defend or expect a jury to comprehend where or when the acts occurred. The [j]ury had no idea nor did [petitioner]." Continuing to fail to cite to the record, he references alleged incidents in "granny's car[,]" asserting that the State produced records to "show that Pap's truck was in the shop." Due to petitioner's continuing failure to cite to the record, as required by Rule 10(c)(7), and his extremely vague argument, this Court cannot fully consider petitioner's final assignment of error. For instance, while he complains about the "vague and highly prejudicial" jury instructions, he does not specify which instructions raise concerns, whether he objected to those instructions, or whether he proposed alternative instructions. For these reasons, we decline to address the merits of this assignment of error. We hereby affirm the circuit court's denial of petitioner's post-trial motions.

Affirmed.

**ISSUED:** April 20, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison